IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-747

No. COA22-19

Filed 15 November 2022

Moore County, No. 19-CVS-998

THE ASCOT CORPORATION, LLC; and HERONSBROOK, LLC; Plaintiffs,

v.

I&R WATERPROOFING, INC., Defendant/Third-Party Plaintiff,

v.

TREMCO BARRIER SOLUTIONS, INC.; TANGLEWOOD LANDSCAPING, LLC; and PEDRO PACHECO JIMENEZ; Third-Party Defendants.

Appeal by Defendant/Third-Party Plaintiff from orders entered 4 August 2021 by Judge James M. Webb in Moore County Superior Court. Heard in the Court of Appeals 9 August 2022.

*Bovis Kyle Burch & Medlin, LLC, by Matthew A. L. Anderson and Brian H. Alligood, for Defendant/Third-Party Plaintiff-Appellant I&R Waterproofing, Inc.*

*Oak City Law LLP, by M. Caroline Lindsey Trautman and Robert E. Fields, III, for Third-Party Defendant-Appellee Tremco Barrier Solutions, Inc.*

*Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones, David L. Levy, and Matthew R. Lancaster, for Third-Party Defendant-Appellee Tanglewood Landscape, LLC.*

COLLINS, Judge.

¶ 1   Defendant/Third-Party Plaintiff I&R Waterproofing, Inc., appeals from orders

dismissing its complaints against Third-Party Defendants Tremco Barrier Solutions, Inc., and Tanglewood Landscape, LLC,[1] for failure to state a claim under N.C. Gen. Stat. § 1A-1 Rule 12(b)(6). The trial court properly dismissed I&R's claims against Tremco for breach of express warranty, indemnity, and contribution. However, I&R sufficiently pled breach of implied warranty of merchantability against Tremco, and sufficiently pled indemnity and contribution against Tanglewood, and the trial court erred by dismissing those claims. We affirm in part and reverse in part, and remand for further proceedings.

## I. Procedural History and Factual Background

This appeal stems from a complaint filed by Ascot Corporation, LLC, and Heronsbrook, LLC, (collectively, Plaintiffs) against I&R arising from alleged residential construction defects causing water intrusion and resulting damage. In March 2016, Ascot, a residential construction general contractor, contracted with I&R to provide waterproofing services in the basement of a residence owned by Heronsbrook. These services included installing a TUFF-N-DRI waterproofing barrier system manufactured by Tremco. Ascot separately contracted with Tanglewood to landscape the surrounding property.

---

[1] I&R's third-party complaint names "Tanglewood Landscaping, LLC" as the third-party defendant. Tanglewood's Motion to Dismiss asserts that "Tanglewood Landscape, LLC" is the appropriate entity to be named in this action.

¶ 3        In July 2016, Heronsbrook sold the property to Steve and Jennifer Stoops.[2] Two years later, the Stoops discovered water intrusion in their basement that had caused significant damage. During the following year, Ascot unsuccessfully attempted to have I&R diagnose and repair the water intrusion. In May 2019, Ascot independently resolved the water intrusion and repaired the damage to the basement, incurring costs in excess of $50,000.

¶ 4        In August 2019, Plaintiffs filed a complaint against I&R, asserting claims for breach of contract, breach of implied warranty of habitability and good workmanship, negligence, and unfair and deceptive trade practices, and seeking to recover the costs incurred for the repairs to the basement, treble damages, and attorneys' fees. With leave of court, I&R filed a third-party complaint pursuant to Rule 14(a) of the North Carolina Rules of Civil Procedure, seeking "compensatory damages and/or contribution" from Tremco and/or Tanglewood, in the event I&R was found liable to Plaintiffs.[3] I&R's complaint asserted claims against Tremco for breach of express warranty, breach of implied warranty of merchantability, negligence, and contribution, and claims against Tanglewood for negligence and contribution.

¶ 5        Tremco moved to dismiss I&R's complaint under Rule 12(b)(6). Tanglewood

---

[2] The Stoops are not parties to the present litigation.

[3] I&R also joined third-party defendant Pedro Pacheco Jimenez. The claims against Jimenez are not at issue on this appeal.

answered and moved to dismiss the complaint under Rule 12(b)(6). The trial court heard the motions to dismiss and entered orders on 4 August 2021 dismissing all claims against Tremco and Tanglewood with prejudice. The trial court certified the orders for immediate review under N.C. Gen. Stat. § 1A-1 Rule 54(b). I&R appealed.

## II.    Discussion

### A. Jurisdiction

¶ 6        I&R appeals from orders dismissing all claims against fewer than all parties. A final judgment as to "one or more but fewer than all of the claims or parties" is immediately appealable if the trial court certifies that "there is no just reason [to] delay" the appeal. N.C. Gen. Stat. § 1A-1, Rule 54(b) (2021). Here, the trial court properly certified the orders for immediate review under Rule 54(b). Accordingly, this Court has jurisdiction.

### B. Standard of Review

¶ 7        In ruling on a Rule 12(b)(6) motion to dismiss, "the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted." *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979) (citation omitted). "[T]he well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970) (quotation marks and

citation omitted). Additionally, "when ruling on a Rule 12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001) (citation omitted).

Dismissal under Rule 12(b)(6) is proper only in the following circumstances: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Wood v. Guilford Cnty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citation omitted). We review de novo a trial court's order allowing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Cheryl Lloyd Humphrey Land Inv. Co., v. Resco Prods., Inc.*, 377 N.C. 384, 2021-NCSC-56, ¶ 8 (citation omitted).

### C. Claims Against Tremco

#### 1. *Breach of Express Warranty*

I&R first argues that its complaint states a valid claim for relief against Tremco for breach of express warranty. Specifically, I&R argues that it states a valid claim against Tremco for breach of Tremco's 30-Year TUFF-N-DRI Basement Waterproofing Warranty.

An express warranty is created when a seller makes "any affirmation of fact or

promise . . . which relates to the goods and becomes part of the basis of the bargain." N.C. Gen. Stat. § 25-2-313(1)(a) (2021). To state a claim for breach of express warranty, a plaintiff must allege (1) that an express warranty was made as to a fact or promise relating to the goods, (2) that the warranty was relied upon by the plaintiff in making his decision to purchase, and (3) that this express warranty was breached by the defendant. *Harbor Point Homeowners' Ass'n v. DJF Enters., Inc.*, 206 N.C. App. 152, 162, 697 S.E.2d 439, 447 (2010) (citation omitted). "A warranty, express or implied, is contractual in nature." *Wyatt v. N.C. Equip. Co.*, 253 N.C. 355, 358, 117 S.E.2d 21, 24 (1960). "As a contract being interpreted, the terms of an express warranty are therefore construed in accordance with their plain meaning[.]" *Hills Mach. Co., LLC v. Pea Creek Mine, LLC*, 265 N.C. App. 408, 416, 828 S.E.2d 709, 715 (2019) (quotation marks and citation omitted). "An issue of contract interpretation is a question of law reviewed de novo." *D.W.H. Painting Co. v. D.W. Ward Constr. Co.*, 174 N.C. App. 327, 330, 620 S.E.2d 887, 890 (2005) (citation omitted).

¶ 11        In its complaint for breach of an express warranty, I&R alleges the following:

> 7. In March 2016, I&R contracted with Plaintiff The Ascot Corporation, LLC to install a waterproofing membrane barrier system at an existing residential construction site located at 590 Heronsbrook Drive, Whispering Pines, North Carolina (the "Property").
>
> 8. On or about March 10, 2016, I&R completed the installation of the waterproofing membrane barrier system, which consisted of the TUFF-N-DRI HS membrane product, the Warm-N-Dri® foundation board, and a

DrainStar® Strip Drain (collectively the "Tremco Barrier System").

9. Upon information and belief, the Tremco Barrier System installed at the Property by I&R was produced, designed, manufactured, assembled, inspected, and sold by Third-Party Defendant Tremco.

10. The Tremco Barrier System installed by I&R was sold with a written 30-year limited warranty, pursuant to which Tremco expressly warranted that the Tremco Barrier System would, under normal use and service, keep the vertical surface of the Property's foundation wall "free of water leakage or seepage" throughout the warranty period."

11. I&R is a "Tremco Barrier Solutions Contractor" as that phrase is used in Tremco's written 30-year limited warranty.

. . . .

14. Upon information and belief, Tremco has been notified of the alleged excess water penetration described in Plaintiffs' Complaint, but has refused to honor the terms of its written 30-year limited warranty.

15. If Plaintiffs should recover damages based on the alleged excess water penetration described in Plaintiffs' Complaint, such recovery will be a proximate result of Tremco's breach of its express written warranty.

16. As a direct and proximate result of Tremco's breach of its express warranty, I&R is entitled to receive from Tremco any amounts awarded to Plaintiffs against I&R with respect to claims arising from I&R's installation of the Tremco Barrier System during construction of the residence on the Property.

¶ 12    Attached as Exhibit A to Tremco's motion to dismiss was the warranty referenced in I&R's complaint. The warranty states:

**This Warranty is From:**

This limited warranty ("Warranty") is provided by Tremco Barrier Solutions, Inc. ("TBS") . . . .

**This Warranty is To:**

You if you are a consumer purchaser ("Buyer") of (1) a new single family detached residence, or (2) a multi-family unit with separate unit ownership, or (3) a multi-family residence with single ownership which has had TUFF-N-DRI System . . . applied to the building's foundation walls.

. . . .

**Limitations and Exceptions:**

. . . .

B.      This Warranty does not apply and TBS has no responsibility for Leakage resulting from:

. . . .

11.      Application of the TUFF-N-DRI System by a contractor other than a TBS Contractor.

¶ 13        I&R did not allege that the warranty was relied upon in making its decision to purchase the TUFF-N-DRI System. *See Harbor Point*, 206 N.C. App. at 162, 697 S.E.2d at 447 (citation omitted); *cf. Ford Motor Credit Co. v. McBride*, 257 N.C. App. 590, 596, 811 S.E.2d 640, 646 (2018) (defendants' allegations were sufficient to state a claim for breach of express warranty where defendants alleged, inter alia, "that they relied on this express warranty when purchasing the vehicle and would not have purchased it had [the] agents not represented to them that the vehicle was in 'good working order and fit to transport' them both"). Furthermore, the terms of the warranty, construed in accordance with their plain meaning, indicate that the

warranty does not extend to, and thus is not enforceable by, I&R. According to the terms, the warranty extends to the "consumer purchaser" of a new residence or unit in which the TUFF-N-DRI System has been applied to the building's foundation walls. As I&R did not allege that it is a "consumer purchaser" of a qualifying residence or unit, I&R did not allege that the warranty extends to I&R.

¶ 14 I&R argues that its allegation that it "is a 'Tremco Barrier Solutions Contractor' as that phrase is used in Tremco's written 30-year limited warranty" is sufficient to allege the warranty extends to I&R. This argument belies the plain meaning of warranty's terms. The phrase "TBS contractor," as used in paragraph 11 under Limitations and Exceptions, is a requirement that the TUFF-N-DRI System be installed by a TBS contractor for a consumer purchaser to be entitled to the warranty's protection; the phrase does not extend the warranty to I&R.

¶ 15 Citing *Sharrard, McGee & Co., P.A. v. Suz's Software, Inc.*, 100 N.C. App. 428, 432, 396 S.E.2d 815, 817 (1990), I&R argues that it "need not even have purchased the Tremco Barrier System itself to recover for Tremco's breach of its express warranty, because North Carolina law does not restrict an action for breach of an express warranty to parties in privity of contract." I&R's reliance on *Sharrard* is misplaced.

¶ 16 In *Sharrard*, this Court addressed whether plaintiff had been assigned its right to sue defendant. 100 N.C. App. at 429, 396 S.E.2d at 816. Plaintiff accounting

firm negotiated the purchase of a software system from defendant software company for plaintiff's client, Guilford Plumbing Supply, Inc. ("GPS"). *Id.* at 430, 396 S.E.2d at 816. During the negotiations, defendant wrote a letter to plaintiff, specifically referencing GPS and guaranteeing defendant's programming with full return and refund privileges should the programming not perform as warranted. *Id.* at 432-33, 396 S.E.2d at 818. Defendant also made several oral guarantees to plaintiff and GPS, and provided GPS employees an instruction manual. *Id.* at 430, 396 S.E.2d at 816. Shortly after installation, the software system proved defective. *Id.* at 430, 396 S.E.2d at 816-17. When defendant refused plaintiff's refund demand, plaintiff filed suit. *Id.*

¶ 17        On appeal, this Court analyzed whether GPS had a legally cognizable claim to assign to plaintiff. Rejecting defendant's argument that privity must have existed between it and GPS before GPS would have any right to sue defendant for breach of express warranty, this Court stated, "[p]rivity is not required when the theory is breach of an express warranty." *Id.* at 432, 396 S.E.2d at 817 (citing *Kinlaw v. Long Mfg. N.C., Inc.*, 298 N.C. 494, 259 S.E.2d 552 (1979)). The Court further explained that "[t]he absence of contractual privity no longer bars a direct claim by an ultimate purchaser against the manufacturer for breach of the manufacturer's express warranty which is directed to the purchaser." *Id.* (citation omitted). Accordingly, for plaintiff to show that GPS had a legally cognizable claim to assign, plaintiff had only

to show that the warranty was "addressed to the ultimate consumer or user." *Id.* at 433, 396 S.E.2d at 818 (quoting *Wyatt*, 253 N.C. at 359, 117 S.E.2d at 24).

¶ 18     Because defendant's letter was intended to warrant its products to GPS and it was reasonable for GPS to rely upon defendant's representations, this Court affirmed the trial court's conclusion that an express warranty existed between GPS and defendant. *Id.* Because GPS had a valid claim for breach of express warranty that it could assert by itself, plaintiff, as assignee, was entitled to assert its claim against defendant. *Id.*

¶ 19     In this case, the warranty at issue was addressed to the "consumer purchaser" of a new residence or unit in which the TUFF-N-DRI System had been applied to the building's foundation walls – the ultimate consumers or users. Under *Sharrard*, the Stoops, as the ultimate consumers, could have a breach of express warranty claim against Tremco to assign. Unlike *Sharrard*, however, I&R did not assert a claim assigned to it by the Stoops. As I&R did not assert an assigned claim, and the express warranty does not extend to, and thus is not enforceable by, I&R, the trial court did not err by dismissing the breach of express warranty claim.

### 2. *Breach of Implied Warranty of Merchantability*

¶ 20     I&R next argues its complaint states a valid claim for relief against Tremco for breach of implied warranty of merchantability.

¶ 21     "Unless excluded or modified (G.S. 25-2-316), a warranty that the goods shall

be merchantable is implied in a contract for sale if the seller is a merchant with respect to goods of that kind." N.C. Gen. Stat. § 25-2-314(1) (2021). To state a claim for breach of implied warranty of merchantability, a plaintiff must allege

> (1) that the goods bought and sold were subject to an implied warranty of merchantability, (2) that the goods did not comply with the warranty in that the goods were defective at the time of sale, (3) that [plaintiff's] injury was due to the defective nature of the goods, and (4) that damages were suffered as a result.

*DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 683, 565 S.E.2d 140, 147 (2002) (quotation marks and citation omitted). "A product defect may be shown by evidence a specific defect existed in a product. Additionally, when a plaintiff does not produce evidence of a specific defect, a product defect may be inferred from evidence the product was put to its ordinary use and the product malfunctioned." *Id.* at 684, 565 S.E.2d at 147 (citation omitted).

I&R's complaint for breach of implied warranty of merchantability alleges:

> 17. I&R hereby incorporates and re-alleges the allegations set forth above, and incorporates and re-alleges the allegations of the Plaintiffs' Complaint and I&R's Amended Answer and Affirmative Defenses thereto to the extent not inconsistent herewith.
>
> 18. The Tremco Barrier System sold by Tremco, and purchased and installed at the Property by I&R, was subject to an implied warranty of merchantability, whereby Tremco warranted that the Tremco Barrier System was of merchantable quality and reasonably fit for the purpose for which it was intended.

19. I&R put the Tremco Barrier System to its ordinary use by installing it on the foundation walls of the Property in a workmanlike manner, in accordance with all product directions and instructions provided by Tremco, and in compliance with all laws, ordinances, rules, regulations, and requirements of all governing authorities having jurisdiction over construction of the residence on the Property.

20. If the allegations set forth in the Complaint of excess water penetration in the foundation walls of the residence on the Property are true, then the Tremco Barrier System malfunctioned after being put to its ordinary use.

21. Accordingly, if Plaintiff should recover damages based on the alleged excess water penetration described in Plaintiffs' Complaint, such recovery will be due to the defective nature of the Tremco Barrier System, and a proximate result of Tremco's breach of the implied warranty of merchantability.

22. As a direct and proximate result of Tremco's breach of the implied warranty of merchantability, I&R is entitled to receive from Tremco any amounts awarded to Plaintiffs against I&R with respect to claims arising from I&R's installation of the Tremco Barrier System during construction of the residence on the Property.

¶ 23        These allegations are sufficient to state a claim for breach of implied warranty of merchantability. I&R alleges that the Tremco Barrier System sold by Tremco and purchased by I&R was subject to an implied warranty of merchantability, satisfying the first element of the claim. I&R also alleges it put the Tremco Barrier System to its ordinary use by installing it on the foundation walls in a workmanlike manner, in accordance with all directions and rules, and that assuming excess water penetrated the foundation walls, the Tremco Barrier System malfunctioned, satisfying the

second element of the claim. I&R further alleges that Plaintiffs' recovery of damages from I&R for excess water penetration would be due to the defective nature of the Tremco Barrier System and that as a direct and proximate result of Tremco's breach of the implied warranty of merchantability, I&R is entitled to receive from Tremco any amounts awarded to Plaintiffs against I&R for the defective Tremco Barrier System. These allegations satisfy the third and fourth elements of the claim.

¶ 24 Tremco argues that "I&R fails to allege anywhere in its pleading that a defect existed in a Tremco product at the time of sale, or what defect existed." However, I&R need not have alleged a specific defect in the Tremco Barrier System. Under what has been referred to as the "malfunction theory" and the "indeterminate defect theory," *DeWitt*, 355 N.C. at 686, 565 S.E.2d at 149, a defect may be inferred from evidence that the Tremco Barrier System was put to its ordinary use and subsequently malfunctioned. I&R's allegations are sufficient to allege a product defect under this theory.

¶ 25 Tremco further argues that I&R's allegation that "if the allegations set forth in Plaintiffs' complaint are true, then the Tremco Barrier System malfunctioned after being put to its ordinary use" is a conclusory statement that fails to establish a necessary element of a claim for breach of implied warranty of merchantability. We disagree.

¶ 26 Plaintiffs made various allegations in their complaint that water penetrated the foundation walls where I&R had applied water proofing; I&R incorporates those allegations into its compliant. I&R further alleges that the Tremco Barrier System was

put to its ordinary use when I&R correctly installed it on the foundation walls. I&R thus alleges that if water penetrated the foundation walls, the Tremco Barrier System malfunctioned. Any duty to produce "adequate circumstantial evidence of a defect" does not arise until later stages of the proceedings, and I&R's allegations at this initial pleading stage are sufficient to allege a product defect at the time of sale. *See Coastal Leasing Corp. v. O'Neal*, 103 N.C. App. 230, 237, 405 S.E.2d 208, 213 (1991) (allegations in the crossclaim were sufficient to raise the inference that any defects in the equipment existed at the time of sale).

¶ 27        Tremco further argues that I&R's breach of express warranty and breach of implied warranty of merchantability claims should be dismissed as they are not proper impleader claims under Rule 14. We disagree.

¶ 28        Before Rule 14 was enacted in 1967, North Carolina lacked an adequate procedural rule governing third-party practice. Accordingly, North Carolina courts constructed a set of judicial rules for impleading by drawing upon statutes which suggested impleader was appropriate peripherally or in a specific situation, including: N.C Gen. Stat. § 1-73, which authorized the court to join parties who were necessary for a "complete determination of the controversy"; N.C. Gen. Stat. § 1-222, which provided that judgments may determine "the ultimate rights of the parties on each side, as between themselves"; and N.C. Gen. Stat. § 1-240, which allowed joinder of third-parties who were joint tortfeasors. *See, e.g., Davis v. Radford*, 233 N.C. 283,

287-89, 63 S.E.2d 822, 826-27 (1951) (contemplating third-party practice prior to Rule 14's enactment); *Moore v. Massengill*, 227 N.C. 244, 245-46, 41 S.E.2d 655, 656 (1947) (interpreting § 1-73).

¶ 29    As the original Comment to Rule 14 notes, "none of these statutes dealt directly with (1) the grounds for impleading (except § 1-240, dealing narrowly with contribution between joint tort-feasors); (2) the procedure by which a third-party plaintiff impleads a third-party defendant; or (3) the kinds of claims that may, after impleader is accomplished, be asserted[.]" N.C. Gen. Stat. § 1A-1, R. 14, cmt. (2021). Nevertheless, the courts developed procedures for impleading within this statutory framework, and the basic rule which evolved permitted impleading only when the claim by the third-party plaintiff was for: "(1) contribution against an alleged joint tort-feasor under § 1-240, or (2) indemnification, but only when the indemnification right arose as a matter of law, and not by express or implied contract." *Id.*

¶ 30    In contrast to North Carolina's approach at the time, Rule 14 of the Federal Rules of Civil Procedure was adopted in 1937 to govern third-party practice in federal court. Federal Rule 14 provided a "direct and plain statement of the substantive test for impleading," prescribed "clearly and concisely the procedure for impleading where the right exists," and concluded with a clear statement "of the various claims which may, after a third-party defendant is impleaded, be asserted by the various parties[.]" *Id.*

¶ 31        Thirty years after federal Rule 14's adoption, North Carolina enacted Rule 14 of our North Carolina Rules of Civil Procedure which mirrors the federal rule. *See An Act to Amend the Laws Relating to Civil Procedure*, 1967 N.C. Sess. Laws 1274 (enacting the Rules of Civil Procedure and repealing, among others, §§ 1-73 and 1-222).[4] North Carolina Rule 14 provides, in relevant part,

> At any time after commencement of the action a defendant, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.

N.C. Gen. Stat. § 1A-1, R. 14(a) (2021). While this language gives the right to implead for contribution and indemnification based in tort as had judicially evolved under North Carolina practice, this language does not limit the right to implead to solely those situations. For example, like the federal rule, North Carolina Rule 14 allows impleading for indemnification where the right to be indemnified has arisen out of contract. *See id.* (expressly contemplating assignees and third-party beneficiaries of contracts); *see also Brogle v. S.C. Elec. & Gas Co.*, 509 F.2d 1216, 1217 n.1 (4th Cir. 1975) (noting that impleading a party for contractual indemnity is covered by Rule 14).

---

[4] The Uniform Contribution Among Tort-Feasors Act, passed the same week as the Act to Amend the Laws Relating to Civil Procedure, repealed § 1-240. An Act to Provide for Contribution Among Joint Tortfeasors and Joint Obligors, § 2, 1967 N.C. Sess. Laws 1091, 1093.

¶ 32        As with federal Rule 14, "[t]he purpose of [North Carolina] Rule 14 is to promote judicial efficiency and the convenience of parties by eliminating circuity of action." *Heath v. Bd. of Comm'rs*, 292 N.C. 369, 376, 233 S.E.2d 889, 893 (1977).

> When the rights of all three parties center upon a common factual setting, economies of time and expense can be achieved by combining the suits into one action. Doing so eliminates duplication in the presentation of evidence and increases the likelihood that consistent results will be reached when multiple claims turn upon identical or similar proof. Additionally, the third-party practice procedure is advantageous in that a potentially damaging time lag between a judgment against defendant in one action and a judgment in his favor against the party ultimately liable in a subsequent action will be avoided. In short, Rule 14 is intended to provide a mechanism for disposing of multiple claims arising from a single set of facts in one action expeditiously and economically.

*Id.* (quoting 6 Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* §1442 (1971)); *see also Am. Exp. Lines, Inc. v. Revel,* 262 F.2d 122, 124-25 (4th Cir. 1958).

¶ 33        At the heart of Rule 14 is the notion that the third-party complaint must be derivative of the original claim. "If the original defendant is not liable to the original plaintiff, the third-party defendant is not liable to the original defendant." *Jones v. Collins*, 58 N.C. App. 753, 756, 294 S.E.2d 384, 385 (1982). Thus, "[a] claim which is independent of the defendant's possible liability to the plaintiff cannot be the basis of impleader under Rule 14." *Spearman v. Pender Cnty. Bd. of Educ.*, 175 N.C. App.

410, 412, 623 S.E.2d 331, 333 (2006) (quotation marks and citations omitted); *see also Horn v. Daniel*, 315 F.2d 471, 474 (10th Cir. 1962) ("[Rule 14] does not permit the joinder of actions of persons who may have a claim against the defendant independently of the plaintiff's claim."). "The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against defendant by the original plaintiff." 6 Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1446 (3d ed. 2010). Nevertheless, "[t]he third party claim need not be based on the same theory as the main claim." *Id.*

Here, I&R alleges that its harm, an essential element of its breach of implied warranty of merchantability claim, depends on the outcome of Plaintiffs' case against them. Additionally, Plaintiffs' claim forms the basis of I&R's complaint – the facts and circumstances that give rise to Plaintiffs' complaint are the same facts and circumstances that form I&R's breach of implied warranty of merchantability claim. Thus, I&R's claim is derivative of Plaintiffs' claim and properly impleaded under Rule 14.

Because I&R has pled facts sufficient to state a claim for breach of implied warranty of merchantability, and the claim is derivative of Plaintiffs' claims against I&R, the trial court improperly dismissed the claim.

### 3. *Negligence (Common Law Indemnity)*

I&R next argues that its complaint states a valid claim for relief against

Tremco for negligence.

¶ 37    We note that I&R has alleged common law indemnity in the form of indemnity implied-in-law, as opposed to merely negligence. In North Carolina, a party's rights to indemnity can rest on "equitable concepts arising from the tort theory of indemnity, often referred to as a contract implied-in-law." *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 38, 587 S.E.2d 470, 474 (2003) (citations omitted). "[I]ndemnity implied-in-law arises from an underlying tort, where a passive tort-feasor pays the judgment owed by an active tort-feasor to the injured third party." *Id.* at 39, 587 S.E.2d at 474. Therefore, "to successfully assert a right to indemnity based on a contract implied-in-law, a party must [sufficiently allege] each of the elements of an underlying tort such as negligence." *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs.*, 180 N.C. App. 257, 268, 636 S.E.2d 835, 843 (2006).

¶ 38    "To state a claim for common law negligence, a plaintiff must allege: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." *Fussell v. N.C. Farm Bureau Mut. Ins. Co.*, 364 N.C. 222, 226, 695 S.E.2d 437, 440 (2010) (citation omitted). "The mere fact that a pleader alleges that an act is one of negligence does not make it so." *Stamey v. Rutherfordton Elec. Membership Corp.*, 247 N.C. 640, 646, 101 S.E.2d 814, 819 (1958). "An allegation of negligence must be sufficiently specific to give information of the particular acts complained of; a general allegation without such particularity does not set out the nature of plaintiff's demand

sufficiently to enable the defendant to prepare his defense." *Id.* at 645, 101 S.E.2d at 818 (citation omitted).

¶ 39        In its third-party complaint, I&R alleges:

> 23. I&R hereby incorporates and re-alleges the allegations set forth above, and incorporates and re-alleges the allegations of the Plaintiffs' Complaint and I&R's Amended Answer and Affirmative Defenses thereto to the extent not inconsistent herewith.
>
> 24. Tremco had a duty to produce, design, manufacture, assemble, and inspect the Tremco Barrier System installed at the Property in the manner of a reasonably prudent manufacturer of the same or similar goods, under the same or similar circumstances, and in accordance with all laws, ordinances, rules, regulations, and requirements of all governing authorities having jurisdiction over construction of the Property.
>
> 25. If the allegations set forth in the Complaint of excess water penetration in the foundation walls of the residence on the Property are true, then Tremco was negligent in the production, design, manufacture, assembly, and/or inspection of the Tremco Barrier System, and in breach of its duties to I&R.
>
> 26. The negligence of Tremco supersedes any alleged negligence or fault of I&R (which negligence or fault is denied).
>
> 27. Any fault or negligence by I&R (which negligence or fault is denied) was passive and secondary in light of the primary and active fault or negligence of Tremco.
>
> 28. As a direct and proximate result of the negligence of Tremco, I&R is involved in litigation in which it faces liability for Tremco's own negligence, and I&R has incurred costs and expenses in order to defend and protect its interests.
>
> 29. Based on the foregoing, I&R seeks and is entitled to

recover damages from Tremco for any amounts that I&R
may be found liable to Plaintiffs in this action as a result
of Tremco's negligence.

¶ 40    The allegations set forth in I&R's complaint, including all incorporated allegations, fail to allege facts sufficiently specific to give information of the particular acts complained of. I&R's general allegation that "Tremco was negligent in the production, design, manufacture, assembly, and/or inspection of the Tremco Barrier System, and in breach of its duties to I&R" was not sufficiently specific and thus does not set out the nature of I&R's demand sufficiently to enable Tremco to prepare its defense. *See id.*

¶ 41    Because I&R has not sufficiently alleged each of the elements of negligence, I&R has failed to state a claim for common law indemnity and the claim was properly dismissed.

### 4. *Contribution*

¶ 42    I&R argues that its complaint states a valid claim for contribution against Tremco.

¶ 43    Contribution is a statutory right of relief in North Carolina governed by the Uniform Contribution Among Tort-Feasors Act, N.C. Gen. Stat. § 1B-1. The Act provides, "where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all

or any of them." N.C. Gen. Stat. § 1B-1(a) (2021). "Under this statute, there is no right to contribution from one who is not a joint tort-feasor." *Kaleel Builders*, 161 N.C. App. at 43, 587 S.E.2d at 477. Joint tortfeasors are parties whose negligent or wrongful acts are united in time or circumstance such that the two acts concur to cause a single injury to a third party. *State Farm Mut. Auto. Ins. Co. v. Holland*, 324 N.C. 466, 470, 380 S.E.2d 100, 103 (1989) (citation omitted). Thus, in order to join a third-party for the purpose of contribution, one must allege that the third-party committed negligent or wrongful acts. *See id.* at 474-76, 380 S.E.2d at 105-06 (holding that a third-party who was not negligent could not be jointly liable for the purpose of contribution).

¶ 44        Here, as discussed above, I&R has failed to sufficiently allege against Tremco each of the elements of negligence. Without sufficiently alleging that Tremco committed a tort, I&R cannot allege that Tremco is a joint tortfeasor. *See id.* Accordingly, I&R's complaint on its face reveals the absence of facts sufficient to state a claim for contribution against Tremco, and its claim for contribution was properly dismissed.

**D. Claims against Tanglewood**

### 1. Negligence (Common Law Indemnity)

¶ 45        I&R argues that its complaint states a valid claim for negligence against Tanglewood.

¶ 46     As against Tremco, I&R has alleged against Tanglewood common law indemnity in the form of indemnity implied-in-law, as opposed to merely negligence. "North Carolina recognizes an implied-in-law right to indemnity when a passive party is made liable for an active party's tortious conduct flowing to and injuring a third party." *Kaleel Builders*, 161 N.C. App. at 46, 587 S.E.2d at 478 (citation omitted). "[T]o successfully assert a right to indemnity based on a contract implied-in-law, a party must [sufficiently allege] each of the elements of an underlying tort such as negligence." *Schenkel*, 180 N.C. App. at 268, 636 S.E.2d at 843. A party must also allege that primary and secondary liability for the underlying tort exists between the parties. *See Kaleel Builders*, 161 N.C. App. at 41, 587 S.E.2d at 475 (citation omitted).

¶ 47     The underlying tort alleged here is negligence. To state a claim for negligence, a plaintiff must allege "(1) a legal duty, (2) a breach thereof, and (3) injury proximately caused by the breach." *Fussell*, 364 N.C. at 226, 695 S.E.2d at 440 (citation omitted).

¶ 48     First, I&R alleges that "Tanglewood subcontracted with The Ascot Corporation, LLC to perform all landscaping work required during construction of the Property" and "had a duty to perform its work on the Property in the manner of a reasonably prudent landscaping contractor under the same or similar circumstances, and in accordance with all laws, ordinances, rules, regulations, and

requirements of all governing authorities having jurisdiction over construction of the Property." These allegations satisfactorily allege a legal duty owed. *See id.* (citation omitted); *Pinnix v. Toomey*, 242 N.C. 358, 362, 87 S.E.2d 893, 897 (1955) ("[A] duty may arise specifically by mandate of statute, or it may arise generally by operation of law under application of the basic rule of the common law which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care[.]").

¶ 49      Second, I&R alleges that Tanglewood "failed to incorporate a trench drain or swale during construction of the residence on the Property, as would have been required to achieve a 5 percent drop in grading within the first 10 feet of the residence, in violation of Section R401.3 of the North Carolina Residential Code"; "failed to properly connect or attach the drainpipes to the strip drain component of the Tremco Barrier System, and failed to install a drainpipe of sufficient length and location to discharge excess water to daylight, in violation of Section R405 of the North Carolina Residential Code"; and "breached its duty perform its work on the Property in the manner of a reasonably prudent landscaping contractor under the same or similar circumstances, and in accordance with all laws, ordinances, rules, regulations, and requirements of all governing authorities having jurisdiction over construction of the Property." These allegations satisfactorily allege a breach of the duty of care. *See Fussell*, 364 N.C. at 226, 695 S.E.2d at 440; *Moore v. Moore*, 268

N.C. 110, 112-13, 150 S.E.2d 75, 77 (1966) ("The breach of duty may be by negligent act or a negligent failure to act."); *see also, e.g., Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 793, 561 S.E.2d 905, 910 (2002) (plaintiff sufficiently alleged breach by alleging defendants negligently failed to construct septic system in compliance with applicable building code).

¶ 50        Third, I&R alleges that "[a]s a direct and proximate result of the negligence of Tanglewood, I&R is involved in litigation in which it faces liability for work performed by Tanglewood, and I&R has incurred costs and expenses in order to defend and protect its interests." In sum, I&R sufficiently states a claim for negligence against Tanglewood.

¶ 51        Furthermore, I&R alleges that "[a]ny fault or negligence by I&R . . . was passive and secondary in light of the primary and active fault or negligence of Tanglewood[,]" and that it "seeks and is entitled to recover damages from Tanglewood for any amounts that I&R may be found liable to Plaintiffs in this action as a result of Tanglewood's negligence." These allegations satisfactorily allege a right to indemnity, should I&R be found liable to Plaintiffs. *See Kaleel Builders*, 162 N.C. App. at 41, 587 S.E.2d at 475 (citation omitted).

¶ 52        Tanglewood argues that the trial court correctly dismissed I&R's indemnity claim because there is no underlying tort. Specifically, Tanglewood argues that "Plaintiffs' viable claims against I&R sound in contract" so "any tort claim against

I&R must fail as a matter of law pursuant to the economic loss rule." However, Plaintiffs sued I&R for negligence and the record contains no order dismissing Plaintiffs' negligence claim. Furthermore, I&R asserts in its brief that its motion to dismiss Plaintiffs' negligence claim was denied, and Plaintiffs do not assert otherwise. Tanglewood essentially asks this Court to decide the viability of Plaintiffs' pending negligence claim against I&R, an issue that is not properly before us.

¶ 53        In sum, Plaintiffs have sued I&R for negligence, and I&R has sufficiently alleged that Tanglewood is derivatively liable should Plaintiffs' claim succeed. Because I&R has stated a claim for indemnity against Tanglewood, the trial court erred by dismissing the claim.

### 2. *Contribution*

¶ 54        Finally, I&R argues that its complaint states a valid claim for contribution against Tanglewood.

¶ 55        "[W]here two or more persons become jointly or severally liable in tort for the same injury to person or property[,] . . . there is a right of contribution among them . . . ." N.C. Gen. Stat. § 1B-1(a). To join a third-party for the purpose of contribution, one must allege that the third-party committed negligent or wrongful acts, and that those negligent or wrongful acts were "united in time or circumstance such that the two acts . . . cause[d] a single injury." *Holland*, 324 N.C. at 470, 380 S.E.2d at 102-03 (citation omitted).

¶ 56          Here, I&R sufficiently alleges Tanglewood's negligence. Additionally, I&R alleges that it is liable with Tanglewood as joint tortfeasors to Plaintiffs:

> To the extent I&R is subject to liability and damages of any kind, including without limitation direct, indirect, special, general, resulting, consequential, or punitive damages, as well as any costs, expenses, and/or attorney's fees, as a result of any act or omission of Tanglewood, I&R is entitled to seek contribution from Tanglewood pursuant to the North Carolina Uniform Contribution Among Joint Tortfeasors Act and/or other applicable law. Accordingly, I&R expressly reserves the right to seek contribution from Tanglewood.

¶ 57          Tanglewood argues that it cannot be a joint tortfeasor because Plaintiffs do not have a viable tort claim against either I&R or Tanglewood, due to the economic loss rule. Tanglewood again asks this Court to determine the viability of Plaintiffs' pending negligence claim against I&R, an issue not properly before us. Furthermore, based on the pleadings before us, the economic loss rule would not bar Plaintiffs from claiming negligence against Tanglewood.

¶ 58          "[T]he economic loss doctrine 'prohibits recovery for economic loss in tort.'" *Land v. Tall House Bldg. Co.*, 165 N.C. App. 880, 884, 602 S.E.2d 1, 4 (2004) (quoting *Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 401, 499 S.E.2d 772, 780 (1998)). "Instead, such claims are governed by contract law[.] The courts have construed the term 'economic losses' to include damage to the product itself." *Id.* (quotation marks and citations omitted). The economic loss doctrine does not apply

where "[t]he injury, proximately caused by the promisor's negligent, or willful, act or omission in the performance of his contract, was to property of the promisee other than the property which was the subject of the contract[.]" *N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 82, 240 S.E.2d 345, 350 (1978) (citing *Firemen's Mut. Ins. Co. v. High Point Sprinkler Co.*, 266 N.C. 134, 146 S.E.2d 53 (1966) (economic loss rule did not apply where contracted-for sprinkler system damaged promisee's merchandise); *Jewell v. Price*, 264 N.C. 459, 142 S.E.2d 1 (1965) (economic loss rule did not apply where contracted-for furnace burned promisee's house)) (other citations omitted).

¶ 59    Here, I&R alleges that "Tanglewood subcontracted with The Ascot Corporation, LLC to perform all landscaping work required during construction of the Property." I&R further alleges that Tanglewood negligently performed its landscaping work.

¶ 60    In Plaintiffs' complaint against I&R, Plaintiffs alleged damages

> including, but not limited to, repair and remediation costs regarding carpet, personal property of the Stoops, the repair and remediation of foundation wall waterproofing systems, the repair and remediation of wall studs, sheetrock, and electrical fixtures[,] remediation of mold associated with the water penetration and the installation of initial French drains and other drainage devices. In addition, Ascot incurred expenses associated with the Stoops inability to occupy and enjoy their basement for an extended period of time."

The damages alleged by Plaintiffs relate to the Stoops' personal property and residence, not the landscaping. Because the injury here was to property "other than the property which was the subject of the contract" between Ascot and Tanglewood, the economic loss rule would not bar a negligence claim by Plaintiffs against Tanglewood. *Ports Auth.*, 294 N.C. at 82, 240 S.E.2d at 350.

Because I&R has stated a claim for contribution against Tanglewood, the trial court erred by dismissing the claim.

### III. Conclusion

For the reasons set forth above, I&R has failed to state legally sufficient claims against Tremco for breach of express warranty, indemnity, and contribution. These claims were properly dismissed. However, I&R has stated a legally sufficient claim against Tremco for breach of implied warranty of merchantability. I&R has also stated legally sufficient claims against Tanglewood for indemnity and contribution. Accordingly, the trial court's order dismissing I&R's claims against Tremco is affirmed in part and reversed in part, and the trial court's order dismissing I&R's claims against Tanglewood is reversed. The matter is remanded for further proceedings.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

Chief Judge STROUD and Judge ARROWOOD concur.